**United States District Court for the Western District of Texas**
**Austin Division**

| | | |
|---|---|---|
| Modesto Rodriguez, | § | |
| Plaintiff, | § | |
| | § | Case no. 21-cv-1087 |
| v. | § | |
| | § | |
| City of Austin and | § | |
| Officer John Doe, | § | |
| Defendants. | § | |

**Plaintiff's Complaint and Request for Jury Trial**

## I. Introduction

1.     This is a lawsuit about an as-yet unidentified Austin police officer who shot Plaintiff Modesto Rodriguez with so-called "less lethal" munitions without any warning. Modesto is deaf. Modesto was shot to punish him for participating in a peaceful protest against police brutality.

2.     This lawsuit is also about the City of Austin's appalling response to protests— especially its pattern of violently violating demonstrators' civil rights—during the weekend of May 30–31, 2020. The City compounded its mishandling of the situation by failing to investigate or attempt to deter further misconduct by Officer Doe and other Austin police.

3.     Officers also failed to follow protocol required and failed to utilize services available to the APD when interacting with a deaf civilian. The Americans with Disabilities Act (ADA) and Section 504 prohibit discrimination and police misconduct against individuals based on disability. (42 USC. § 12131, et seq. and 29 USC. § 794). No attempt was made by Austin

1

police to communicate to Modesto that he was required to clear the area. No extra steps or precautions were taken by APD before they started shooting into the crowd that clearly included deaf protesters.

4.      Finally, based on multiple credible sources, the City caused severe injuries by allowing its stockpile of "less-lethal" munitions to expire, and thus harden, and then arming its police with these expired munitions for crowd control during peaceful demonstrations.

## II.  Parties

5.      Modesto Rodriguez is a resident of Austin, Texas. Modesto is deaf.

6.      The City of Austin is a Texas municipal corporation in the Western District of Texas. Brian Manley was Austin's policymaker for policing when Modesto was injured.

7.      Defendant John Doe(s) are one or more as-yet unidentified (to Modesto or the Austin community, anyway) Austin police officer(s). Defendant City of Austin knows the identity of the Doe Defendants.

## III.  Jurisdiction

8.      This Court has federal question subject matter jurisdiction over this 42 U.S.C. § 1983 lawsuit under 28 U.S.C. § 1331.

9.      This Court has general personal jurisdiction over the Officer Defendants because they work and live in Texas. The City of Austin is subject to general personal jurisdiction because it is a Texas municipality.

2

10.     This Court has specific personal jurisdiction over the Officer Defendants and the

City because this case is about their conduct that occurred here in Austin, Texas.

**IV.  Venue**

11.     Under 28 U.S.C. § 1391(b), the Western District of Texas is the correct venue for

this lawsuit because the events described above and below occurred in Austin.

**V.  Facts**

**A.  Officers shot Modesto Rodriguez without warning and even though he was doing
     nothing wrong.**

12.     On the evening of May 30, 2020, Modesto Rodriguez was peacefully exercising

his constitutional right to assemble and protest the government. Modesto and his friends were

gathered with a group of protestors near the southeast corner of 8th Street and the I-35

frontage road. In other words, Modesto was across the street from the Austin Police

Department headquarters. Austin police officers were standing on the I35 bridge that carries

interstate traffic above 8th Street and another line of officers was standing at the east end of

the plaza in front of APD headquarters.

13.     This picture—taken by a bystander at approximately the same time that

Modesto was shot—shows the two police lines, one above the crowd on the bridge and the

other on the elevated plaza in front of APD headquarters:

3



14.    Modesto, who is deaf, was not given any indication that law enforcement was clearing the area.

15.    At approx. 9:15pm, Officer Doe shot Modesto twice without warning. Officer Doe shot Modesto in his ankle and his chest.

16.    Modesto's wounds were treated at the emergency room at St. David's on Ben White.

17.    On May 31, Texas Tribune journalists collected spent munitions fired by Austin police at demonstrators, including Modesto, on May 30 and 31:



https://www.texastribune.org/2020/06/03/texas-police-force-protests-george-floyd/.

18.     Austin police Chief Brian Manley later identified the types of munitions that he ordered his officers to carry and use on May 30 and 31. Under questioning from the Austin City Council— and referring to the picture of expended projectiles collected by Texas Tribune journalists (above)—he stated:

> And then since you've got these pictures up here, what I see is the 12-gauge munition is the one on the direct left. That is a foam baton round, and so that -- rubber bullets are -- and I guess maybe it's a misnomer -- rubber bullets are also from a 12-gauge shotgun something you do as a skip round into the answering or something. That is a foam baton round that we also have access and use of. That's what that larger one is that's being held there. And then of course the one in the middle is a gas can, and I don't know whether that is smoke or whether that was the cs can.

https://www.austintexas.gov/edims/document.cfm?id=341786 (Transcript Austin City Council, June 4, 2020).

19.    Upon information and belief, the City armed its police on May 30 with expired

munitions which had hardened over time and thus caused more severe injuries than munitions

used within the manufacturers' recommended time frames.

**B.  Other protesters were also injured.**

20.    A group of emergency room doctors who had treated Austinites injured by police

on May 30 and May 31 at Dell Seton Medical Center, published an op-ed in The New England

Journal of Medicine about their observations. The doctors unequivocally concluded that these

munitions should not be used for crowd control.

**VI.  Claims**

**A.  Officer Doe violated Modesto Rodriguez's First Amendment rights when he/she shot Modesto in retaliation for protesting police misconduct.**

21.    Modesto Rodriguez incorporates sections I through V above into his First

Amendment claim.

22.    Modesto brings this claim under 42 U.S.C. § 1983.

23.    Modesto exercised his right to free speech and his right to assemble with other

demonstrators to protest police brutality on May 30, 2020.

24.    Officer Doe shot Modesto because Modesto was protesting Austin police and

other police departments around the country for their habitual use of excessive force. The

Officer Defendant's decision to shoot Modesto with "less than lethal" rounds was substantially

motivated by Modesto's exercise of his First Amendment rights.

25.     The Officer Defendant was acting under color of law when he/she shot Modesto as retribution for Modesto exercising his First Amendment rights. The Officer Defendant was acting under color of law when he/she directly and proximately caused Modesto's injuries.

**B. Officer Doe violated Modesto Rodriguez's Fourth and Fourteenth Amendment rights when he/she shot Modesto without justification.**

26.     Modesto Rodriguez incorporates sections I through VI.A above into his Fourth and Fourteenth Amendment claims.

27.     Modesto brings this claim under 42 U.S.C. § 1983.

28.     The Officer Defendant is liable to Plaintiff under 42 U.S.C. § 1983 for his/her use of excessive force that constituted a deprivation of Modesto's Fourth and Fourteenth Constitutional right to due process.

29.     The Officer Defendant's unlawful and unjustified use of force against Modesto was excessive and was objectively unreasonable in light of established law. The Officer Defendant shot Modesto even though Modesto did not pose a danger to anyone. Modesto was not armed and never presented a threat to any of the individuals around him.

30.     The force used by the Officer Defendant was unnecessary, excessive, and unreasonable under the circumstances because Modesto did not pose an immediate threat to the safety of police officers or others. The use of such excessive force was objectively unnecessary. Additionally, the use of such force was substantially motivated by Modesto's

7

presence at a protest against police brutality. Modesto posed no threat to officers to justify the use of such force.

31.    The Officer Defendant was acting under color of law when he/she shot Modesto. Defendant engaged in a willful, malicious, and reckless course of conduct that was intended to cause and, in fact, caused Modesto to suffer extreme and severe mental and emotional distress, agony, and anxiety.

32.    Defendant's unlawful and unconstitutional use of force against Modesto directly and proximately caused his damages.

**C.  Officer Doe acted with such impunity and reckless disregard for civil rights, this case warrants damages that will deter this type of misconduct in the future.**

33.    Modesto Rodriguez incorporates sections I through VI.B above into his punitive damages claim.

34.    The Officer Defendant's actions and conduct were egregious, reckless, and endangered numerous peaceful protesters and bystanders. Modesto seeks punitive damages to deter this type of retaliation and excessive force against protesters who demonstrate against police brutality in the future.

**D.  The City of Austin's policy of using excessive violence to control demonstration crowds violated protesters' First, Fourth, and Fourteenth Amendment rights.**

35.    Modesto Rodriguez incorporates sections I through VI.C above into his *Monell* claim.

36.    Modesto brings this claim under 42 U.S.C. § 1983.

8

37.     Austin had these policies, practices, and customs on May 30, 2020:

a.  A policy of not using dangerous kinetic projectiles that caused severe and permanent injuries to control peaceful demonstrations,

b.  A policy of using excessive force against non-violent demonstrators,

c.  A policy not to adequately train officers regarding civil rights protected by the United States Constitution,

d.  A policy not to adequately train officers in crowd control during non-violent protests,

e.  A policy not to adequately supervise officers doing crowd control during non-violent protests,

f.  A policy not to intervene to stop excessive force and civil rights violations by its officers during non-violent protests,

g.  A policy not to investigate excessive violence by its officers against peaceful protesters, and

h.  A policy not to adequately discipline officers for—and deter officers from—using excessive force and violating protesters' civil rights during demonstrations.

38.     The City and Brian Manley knew about these policies and directed Austin police to comply with them. The City and Brian Manley developed and issued these policing policies with deliberate indifference to Modesto's and other peaceful demonstrators' civil rights.

39.     The City and Brian Manley were aware of the obvious consequences of these policies. Implementation of these policies made it predictable that Modesto's constitutional rights would be violated in the manner they were, and the City and Brian Manley knew that was likely to occur. It was obvious that these policies would injure people on May 30. The City and Brian Manley condoned and ratified the civil rights violations and the conduct that caused injuries on May 30 by continuing to mandate the same policies on May 31.

40.     These polices were the moving force behind the Officer Defendant's violation of Modesto's civil rights and thus, proximately caused Modesto's injury.

**E.   The City was negligent when it used expired munitions against protesters.**

41.     Modesto Rodriguez incorporates sections I through VI.D above into his negligence claim.

42.     The City had a duty to every Austinite, including Modesto, to maintain and keep its stockpiles of police equipment functional and up to date. The City had a duty to Modesto and every other protester not to arm its police with expired munitions that become more dangerous with age when its police were sent to control crowds during demonstrations. Nonetheless, upon information and belief, the City knowingly armed its police with expired munitions on May 30, 2020 and thus breached its duty to Austinites including Modesto.

43.     Upon information and belief, Modesto's injuries were more serious because the projectile was expired and had hardened. Upon information and belief, the City's failure to maintain unexpired munitions stores and the deliberate decision to use expired munitions against Modesto and other protesters directly and proximately caused Modesto's injuries.

**F.   Austin Police violated the Americans with Disabilities Act when they failed to provide communications aids and services or use the notes app on their APD-issued cell phone to communicate.**

44.     According to APD Officer Marler, who heads the department's community and culture team, APD's training for handling civilians with disabilities consists of two parts. One section, called Services for the Deaf, is mandated by the Texas Commission on Law

10

Enforcement (TCOLE) and officers must complete it in order to receive their basic peace officer license. The other part of the training is supplementary instruction specific to APD due to the large deaf population in Austin.

45.      The TCOLE training works in conjunction with the ADA and requires that APD must provide communication aids and services. TCOLE also outlines the best practices for officers who are in emergency situations who are unable to obtain an interpreter quickly. Officers are encouraged to use the notes app on their APD-issued cell phone to write messages back and forth.

46.      On May 30, 2020, Austin Police Officers failed to follow their own policies and completely disregarded Modesto's safety. Modesto was unable to hear the verbal commands to clear the area (if any were given) and was shot while he exercised his right to free speech and his right to assemble with other demonstrators. Austin Police including Officer Doe violated Modesto's rights by failing to provide him reasonable accommodation in their execution of police tactics, including use of force.

**VII.   Damages**

47.      Modesto Rodriguez incorporates sections I through VI above into this section on damages.

48.      Modesto seeks recovery for all of his damages including past and future pain, past and future mental anguish, past and future disfigurement, past and future physical impairment, past and future loss of enjoyment of life, past and future medical expenses, past

and future lost income, past and future loss of consortium, past and future loss of services, miscellaneous other economic damages including out-of-pocket expenses, pre- and post-judgment interest, attorney's fees, expenses, and costs.

**VIII.  Request for jury trial**

49.    Plaintiff requests a jury trial.

**IX.  Prayer**

50.    For all these reasons, Modesto Rodriguez requests that the City of Austin be summoned to appear and answer Modesto's allegations and identify its employees who shot Modesto. After a jury trial regarding his claims, Modesto seeks to recover the damages listed above in an amount to be determined by the jury and any other relief to which he is entitled.

December 1, 2021                                    Respectfully submitted,

                                                   */s/ Rebecca Webber*
                                                   Webber Law
                                                   4228 Threadgill Street
                                                   Austin, Texas 78723
                                                   rebecca@rebweblaw.com
                                                   512-669-9506
                                                   Texas Bar no. 24060805

                                                   Scott Hendler
                                                   shendler@hendlerlaw.com
                                                   Texas Bar no. 09445500

                                                   Laura Goettsche
                                                   lgoettsche@hendlerlaw.com
                                                   Texas Bar no. 24091798

                                                   Hendler Flores Law

12

901 S. MoPac Expressway
Bldg 1, Suite 300
Austin, Texas 78746
Tel: 512-439-3202
Fax: 512-439-3201

13