UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MODESTO RODRIGUEZ; | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 1:21-CV-1087-RP |
| | § | |
| CITY OF AUSTIN and JOHN DOES; | § | |
| | § | |
| Defendants. | § | |

## O R D E R

Before the Court is Plaintiff's Motion to Exclude, or in the Alternative, Limit Proposed Opinions and Testimony of Craig Miller, Dkt. 35, and all related responses and replies. The District Court referred the motion to the undersigned Magistrate Judge for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

### I. BACKGROUND

This is a federal civil rights cause of action, brought by Modesto Rodriguez alleging excessive force against John Doe officers and the City of Austin for injuries he sustained while participating in a protest on May 30, 2020. Craig Miller is a former Deputy Chief of Police for the Dallas Police Department and Chief of Police as Dallas ISD. Dkt. 35-1. He has been retained by the City to testify about the use of force involved in the May 30, 2020, incident.

Rodriguez moves to exclude Miller, arguing his opinions are inadmissible and that he is not qualified to render them. Dkt. 35. Rodriguez identifies four subject areas for limitation and/or exclusion: (1) the quality of Austin police training;

1

(2) disputed facts allegedly outside Miller's personal knowledge and aera of expertise; (3) "force science principles"; and (4) attempts to render and legal conclusions for the jury. The City accedes that Miller will not testify as to the latter two subject areas. Accordingly, the undersigned addresses only the first two.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 provides the standard for determining the admissibility of expert testimony. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597-98 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under *Daubert*, a trial court acts as a "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 147 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002). *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147. Experts need not be highly qualified to testify, and differences in expertise go to the weight of the testi-

mony, rather than admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Nonetheless, courts need not admit testimony that is based purely on the unsupported assertions of the expert. *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1997); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

In addition to being qualified, an expert's methodology for developing the basis of her opinion must be reliable. *Daubert*, 509 U.S. at 592-93; *Moore*, 151 F.3d at 276. "The expert's assurances that he [or she] has utilized generally accepted scientific methodology is insufficient." *Moore*, 151 F.3d at 276. Even if the expert is qualified and the basis of his or her opinion is reliable, the underlying methodology must have also been correctly applied to the case's particular facts in order for the expert's testimony to be relevant. *Daubert*, 509 U.S. at 593*; Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). The party proffering expert testimony has the burden of establishing that the challenged testimony is admissible. Fed. R. Evid. 104(a). The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276.

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## III. ANALYSIS

### A.   Miller's Opinions Regarding Quality of APD Training

Rodriguez takes issues with two of Miller's opinions regarding the quality of Austin Police Department officer training: "The Adequacy of APD Officer Training"; and "The Austin Police Department Is Very Progressive in Training Officers in Working with The Deaf Community." Dkt. 49-3, at 9, 16. Rodriguez complains that Miller's opinions lack objectivity, and that he compliments the Austin Police Academy and the quality of Austin Police Department training without analysis or comparison to other similar entities. Rodriguez moves to exclude Miller's testimony as the City has not established he is an expert on police training academies and that his testimony is not reliable. Dkt. 35.

Particularly, Rodriguez complains about Miller's descriptions of the Academy as "exceptional," "outstanding," "very thorough," "very advanced and professional," and "one of the finest police training academies in the United States." Dkt. 35-2, at 75:25-77:7; 35-3. Additionally, Rodriguez complains of Miller's description of the Austin Police Department as "progressive" in training officers in working with the deaf community. Dkt. 35-2, at 157:13-17. Rodriguez asserts these opinions are unsubstantiated and made without reliable methodology. Further, Rodriguez argues, Miller is not an expert in police training academies, has spent two hours at the Austin Police Academy—never attended a class or reviewed testing, has only attended the Dallas Police Academy, and has never audited an academy; therefore, he lacks a sufficient foundation of knowledge to render these opinions. Dkt. 35-2, at 77:24-

4

78:3, 78:24-79:1; 85:20, 79:2-9, 81:11-16, 82:2-10. Additionally, Rodriguez argues that Miller improperly bases his conclusions on the quality of a police academy on the police force's policies and procedures manuals. Dkt. 35-2, at 80:9-24

The City responds that Miller's opinions on the quality of the City of Austin Police training is admissible. Dkt. 46. The City asserts that in his expert report, Miller compares Austin's Academy to those in other police departments in Texas, including Dallas, Houston, San Antonio, along with departments in other cities and towns. Dkt. 46-2, at 55-56. The City asserts that Miller's "exceptional" determination rests on the fact that APD's training provides twice as many training hours to officers compared to that of smaller cities and towns, and requires officers go back through training and recertification every two years. *Id.*, at 49, 77-87. Additionally, the City argues that Miller's determination that APD is "progressive" is in part based on training officers through real life simulations and following Lexipol and other national recommendations and standards. *Id.*, at 86-88. The City also argues that Miller visited APD's Academy twice, including for six hours where he observed training and spoke with staff and students. *Id.*, at 46-47, 81. Additionally, the City asserts Miller attended the Dallas training academy and visited San Antonio's training academy. *Id.*, at 78-80. Rodriguez responds that time spent is not a sufficient basis for evaluating training. Dkt. 50, at 2.

A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a particular subject. *Wilson v. Woods*, 163 F.3d 935 (5th Cir. 1999). However, an expert witness

5

need not be highly credentialed or qualified to offer an expert opinion to the factfinder. *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199-200 (5th Cir. 2016). "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss,* 571 F.3d at 452. Miller, who served in law enforcement for over thirty years, testified that he analyzed the quality of the APD academy based on comparing it to other academies, and assessed it as "exceptional" based on the hours spent training and the requirement that officers be recertified every two years. Dkt. 46-2, at 85-87. Additionally, he identified the APD Academy as "progressive" because APD attempted to meet and/or exceed the national standards for best practices. *Id.*, at 87-89.

The undersigned finds that Miller's opinions on these topics should not be excluded. "To be admissible under Rule 702, the court must find that the evidence is both relevant and reliable." *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012) (citing *United States v. Valencia*, 600 F.3d 389, 423 (5th Cir. 2010)). The reliability inquiry requires the Court to assess whether the expert's reasoning and methodology underlying the testimony are valid. *See Daubert*, 509 U.S. at 593. "[F]undamentally unsupported" opinions "offer[ ] no expert assistance to the [trier of fact]" and should be excluded. *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005). However, the trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

In this case, Miller based his opinions of the quality of APD's academy and training based upon his comparison to other academies and national norms. Thus, Rodriguez's attack on Miller's expertise relates to the bases and sources of his opinion, which affects the weight to be assigned that opinion rather than its admissibility. *Viterbo,* 826 F.2d at 422. Any issue with Miller's opinions on this topic is better addressed through the adversary process and not through exclusion. *Daubert*, 509 U.S. at 596; *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 625 (5th Cir. 2018) ("[T]his battle should be fought with the conventional weapons of cross-examination and competing testimony — not the nuclear option of exclusion.").

### B.     Miller's Reliance on Facts Outside His Personal Knowledge

Rodriguez also complains that in his opinion and testimony, Miller recites "facts" to the jury outside of his personal knowledge. Rodriguez argues that pages four through seven of his report are replete with material Miller cannot be permitted to convey to the jury. Dkt. 35-3, at 4-7. The City responds that an expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. Dkt. 46, at 5 (citing Fed. R. Evid. 703). The City argues that Miller based his opinions on the Complaint, reports and statements of police officers, as well as videos of objects being thrown by protesters. Dkt. 46-2, at 117-119.

"[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592. "Experts are permitted to rely on assumptions when reaching their opinions," but "those assumptions must have some factual basis in the record and an underlying

7

rationale." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 806-07 (5th Cir. 2020). "But there is no requirement that an expert derive his opinion from firsthand knowledge or observation." *Id.* at 801.

Rodriguez complains about Miller's statements relating to the assumption that Rodriguez was shot while he intentionally threw a bottle toward officers. Dkt. 35-2, at 140:6-12; Dkt. 35-3, at ¶ 20. The City responds that the timing of the incident, including when Rodriguez was shot in relation to when he intentionally threw an object at police, is based upon video evidence of the events. The undersigned finds that Miller's testimony is not a forensic analysis of events, but a statement of what occurred in the video he reviewed, and should not be excluded.

Rodriguez complains that Miller improperly testified that protesters threw rocks, water bottles, bricks, and smoke cannisters at the officers. Dkt. 35-2, at 121:15-25; Dkt. 35-3, at ¶¶ 17, 20, 37. Miller testified that he learned information about what objects were thrown by protesters from officer statements he read in relation to other cases. Dkt. 46-2, at 117-19. In his report, Miller also refers to the fact that he reviewed "multiple Assault on Peace Officer offenses (2020-1520375) involving known and unknown suspects who were throwing items at officers." Dkt. 46-3, at 13. Federal Rule of Evidence 703 "permit[s] an expert witness to base his opinion on 'facts or data ... that the expert has been made aware of or personally observed' and to opine [and based his opinion] on inadmissible evidence if 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 269

8

& n.1 (5th Cir. 2022). Miller relied on witness statements and video in forming his opinion. His statement regarding projectiles thrown by protesters should not be excluded.

Rodriguez also complains about Miller's testimony that Rodriguez was "protesting with a group of his friends," and "standing with his friends" before the incident. Dkt. 35-2, at 6. He also comments as to the location where Rodriguez was initially observed. *Id.* These statements were alleged in Rodriguez's Complaint, and therefore were properly considered as a basis for Miller's opinion.

Rodriguez next complains that Miller offers several conclusions about the officers involved in the incident that are without basis and cannot be presented to the jury. For instance, Miller asserts the involved officers were in fear for their safety. Dkt. 46-3, at 15. He additionally states none of the officers had ever seen this type of crowd before. *Id.*, at 12. The City asserts Miller reviewed numerous reports from APD officers making statements to this effect. Dkt. 46-5, Dkt. 46-6, Dkt. 46-7, Dkt. 46-8. Miller states, "[a]fter reviewing the video and documents I have been supplied, it is clear that the actions of the crowd on May 31, 2020, had never been seen or experienced by officers working the incident." Dkt. 46-3, at 15. Accordingly, because he bases his statements on the record, his testimony on this issue should not be excluded under *Daubert*.

Rodriguez also complains that Miller states that the involved officers did not know deaf protestors were present. Dkt. 35-2, at 104:18-106:21. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight

9

to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996). Opposing counsel is free to cross-examine Miller about the factual bases for Miller's statement that officers were unaware that deaf protesters were present.

In addition, Rodriguez asserts that Miller cannot draw the conclusion for the jury that "no officer has been identified in this incident," because Rodriguez's expert has identified officers. Dkt. 35-3. Miller confirmed during his deposition that he will not opine about who shot at Rodriguez. Dkt. 35-2, at 93:23-94:7. Thus any testimony on this issue need not be excluded, as it will be addressed by opposing evidence presented at trial.

Finally, Rodriguez asserts that Miller should not be permitted to opine to the jury as to the protest scene around the country in May 2020, such as whether protestors or officers had been injured in other cities, as he relies on a New York Times article. Dkt. 35-2, at 108:15-109:3, 112:8-13; Dkt. 35-3. As long as the requirements of Federal Rule of Evidence 703 are met:

> The number of sources on which an expert may reasonably rely "is virtually infinite," and such sources include interviews, reports prepared by third parties, scientific theories or test results, clinical and other studies, technical publications, business, financial, and accounting records, economic statistics, opinions of other experts, and general knowledge or experience.

Jack B. Weinstein and Margaret A. Berger, 4 Weinstein's Federal Evidence § 703.04[3], at 703-15 to 703-20 (2d ed. 2005). The undersigned finds Miller's testimony should not be excluded simply because he relies on a newspaper article.

Plaintiff's Opposed Motion to Exclude, or in the Alternative, Limit proposed opinions and Testimony of Craig Miller, Dkt. 35, is **DENIED**.

SIGNED September 14, 2023.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE