**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **Modesto Rodriguez,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. 1:21-cv-1087-RP** |
| | § | |
| **City of Austin and JUSTIN** | § | |
| **WRIGHT,** | § | |
| *Defendants.* | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT OFFICER WRIGHT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff Modesto Rodriguez, by and through the undersigned, and hereby

files his Response to Defendant Officer Wright's Motion for Summary Judgment (Dkt. No. 103).[1]

---

[1] Plaintiff intends to file a Motion for Leave to Amend his complaint to remove his claims under the ADA/RA and First Amendment. Because Plaintiff does not intend to further pursue these claims, the Motion for Summary Judgment on the First Amendment claims is mooted. Accordingly, Plaintiff does not respond to Wright's First Amendment argument.

# Table of Contents

Summary Judgment Evidence ................................................................................ 3

Background ............................................................................................................ 4

Facts ..................................................................................................................... 5

Legal Standard ...................................................................................................... 9

ARGUMENT & AUTHORITIES ........................................................................ 10

    I.   Constitutional Violation Question ................................................................ 10

    A.   The excessive force claim arises from a seizure, thus implicating the Fourth Amendment and its objective reasonableness standard. ...................................... 10

    B.   Taken in the light most favorable to Rodriguez, Wright's shooting him constituted a seizure under the Fourth Amendment .................................................... 11

    C.   Wright's unreasonable use of force violated Rodriguez's Fourth Amendment right against unreasonable seizure. ............................................................................ 15

    D.   Even under a Fourteenth Amendment analysis, disputed issues of material fact exist on the claim insofar that summary judgment is inappropriate ................................ 21

    E.   Officer Wright violated the Constitution, both by his own actions and the aggregate actions of his and another officer's shooting Rodriguez. ..................................... 22

    II.  The Qualified Immunity Question ................................................................. 26

Conclusion ........................................................................................................... 30

**Summary Judgment Evidence**

<u>Exhibits Introduced by Defendant Justin Wright</u>
Def. Ex. 1      Henderson Deposition
Def. Ex. 3      Alas Deposition
Def. Ex. 5      Wright Deposition
Def. Ex. 8      Cherne Deposition
Def. Ex. 19     Rodriguez Deposition

<u>Other Exhibits</u>
Ex. A      Expert Report of Michael Maloney
Ex. B      Rodriguez Incident Video Excerpt (COA 37537) with Sound (COA 4597)
Ex. C      General Order 206 (COA 0068-0074)
Ex. D      Training Slide
Ex. E      Expert Report of Jeff Noble

**Background**

On May 30, 2020, Officer Wright (Wright) and another officer from the City of Austin (COA) Police Department shot Modesto Rodriguez (Rodriguez) with "less lethal" beanbag munitions from a shotgun, injuring him on his right foot and upper left torso.[2] Rodriguez brought this lawsuit on December 1, 2021. On December 5, 2023 Wright brought a motion to dismiss the lawsuit for allegedly failing to state a claim or, in the alternative, for judgment on the pleadings.[3] That motion was denied by the Court on August 14, 2024. On August 13, 2024 Wright filed a motion for summary judgment.[4] This response follows.

---

[2] *See* Exhibit A, Michael Maloney report, p. 3.
[3] Dkt. No. 67.
[4] Dkt. No 103.

**Facts**

By this point, the Court is familiar with the statement of facts provided by both Plaintiff Rodriguez and Defendant Wright. In Wright's motion for summary judgment (motion), many of the initial facts have no relevance to this case. For example, in paragraphs 4-6 ("Major cities across the United States were beset with violent protests and riots in response to the in-custody death of George Floyd in Minnesota"), Wright proffers data and statistics about "looting," "arson," and "weapons used by rioters nationwide." These simply have nothing to do with what happened on May 30, 2020 in Austin, Texas at the Interstate 35 overpass and 8th Street intersection, seen here in an aerial photograph:



For purposes of this response, Rodriguez here summarizes two subsets of facts pertinent to Defendant Wright's current motion: (1) undisputed relevant facts, and (2) disputed relevant facts.

_Undisputed Facts_

• "The vast majority of beanbag impacts on the day[] in question [including Rodriguez, were] _not_ followed up with any attempt to confront, detain, or arrest the person who was impacted."[5]

• APD Officers, including Wright, did not approach or attempt to make contact with Rodriguez after pelting him with beanbag rounds.

• No officers relevant to this case suffered any serious bodily injury as a result of Rodriguez's tossing a water bottle, which landed on the ground without contacting anyone.

• Officer Wright shot Rodriguez on May 30, 2020.[6]

• Wright and another officer shot Rodriguez _**after**_ he tossed the water bottle.[7]

• Officers gave no warning, nor attempted to give any warning, before shooting Rodriguez.

• Rodriguez suffered bodily injury as a result of being shot by APD Officers.[8]

• Rodriguez was never prosecuted or presented for prosecution for violating _any_ ordinance, statute, or other law pertaining to his actions on May 30, 2020.

_Disputed Facts_

| Defendant | Plaintiff |
|---|---|
| The relevant incident on May 30, 2020 was a "day-long riot."[9] | The relevant video evidence shows a largely non-violent protest with participants milling around and no law enforcement attempt to disperse, tear gas, or otherwise quell any "violence." When faced with footage of the Rodriguez shooting incident, Chief Robin Henderson conceded the protest at that time was not a "riot."[10] |

---

[5] Mot. at ¶ 12.

[6] Mot., ¶ 15. While it appears that Wright attempts to insert some ambiguity to this fact, viewed in light most favorable to the nonmovant, it is listed here. Further, Plaintiff's expert Michael Maloney identifies Wright as one of the officers who shot Rodriguez in his report. _See_ Ex. A.

[7] _See_ Def. Ex. 1, Henderson Depo., at 34:19-22 ("Q: ... after Modesto Rodriguez tosses the object, he takes some steps backwards and turns around before he appears to be impacted? A: I agree.").

[8] _See_ Exhibit A, p. 3. While Wright does not mention Rodriguez's injuries in his Motion, that silence can reasonably be interpreted as concession that Rodriguez's injuries were a direct result of being shot with the beanbag rounds.

[9] _E.g.,_ Mot., ¶ 30, p. 19, _et seq._

[10] Exhibit B, Video Excerpt Depicting Incident (with sound); Def. Ex. 1, Henderson Depo. at 39:21-23 ("Q: Okay. When you look at this scene[], would you describe this scene at this time as a riot? A: No. Protest."); _see also_ Mot. Exhibits 11, 12 and other video and photographic evidence in the record before the Court.

| | |
|---|---|
| The I-35 overpass near the police station was "the epicenter of the violence."[11] | The video and photographic evidence speak for themselves—there was no discernible "epicenter of violence" relevant to Rodriguez's presence and actions on May 30, 2020. |
| Underneath the bridge "agitators were out of control… cars being set on fire, mattresses being set on fire, fireworks, rocks, stones, sticks, and bottles."[12] | Same as above—there are no burning cars or active blazes anywhere in the relevant photographic and video evidence, and the jury will rightly give little or no weight to Defendants' characterization of this protest as a "riot" necessitating law enforcement's use of shooting beanbag rounds. |
| "APD placed officers near the protests … only to monitor the crowd."[13] | Both lines of police officers (at the overpass and in front of the Main) were armed with shotguns and impacted people in the street.[14] If Wright's proposition were true, then it would render the "overpass line" of officers completely redundant, as the officers on the street were better able to "monitor" the crowd. Plaintiff alleges that the officers were placed there to impact protestors as a punitive measure. |
| Officers had "no idea what [any airborne] object [was] until it land[ed।]"[15] | Both over the course of the day and in the instant moment, visually, officers were able to see that many of the objects were, in fact, plastic water bottles. Again, this can be seen from the video itself.[16] |
| "The purpose of impacting projectile-throwing protestors was to disperse violent agitators and 'stop their immediate action[s]' of violence."[17] | Rodriguez had already tossed a water bottle when officers shot him—there was no "immediate action of violence."[18] Further, the intent was to punish, not "disperse"—no dispersal order was ever given at any relevant time, and Rodriguez was, in fact, walking away from the police when they shot him. Finally, the beanbag rounds are meant to incapacitate and control the target, not disperse. Were the intent to disperse, it would have been obvious after the first impact by |

[11] Motion (Mot.) at ¶ 9.
[12] Id.
[13] Id., ¶ 10.
[14] Def. Ex. 3, Alas Depo., at 90:03-07.
[15] Mot., ¶ 12.
[16] Ex. B.
[17] Id., ¶ 12.
[18] Ex. B.

| | officers that it was not having the desired effect, as protestors continued to linger and walk the area *after* officers shot not only Rodriguez, but Tyree Talley as well. |
|---|---|
| "[A]t roughly 00:34 [Exhibit 11 to Mot.] agitators begin raining innumerable projectiles down on and around the officers from multiple directions …."[19] | By visual count, eleven objects are thrown. Most of the items thrown appear to be water bottles, and none appear to impact or otherwise harm officers. |
| "Wright's intent was only to disperse violent rioters from within the protest crowds."[20] | Again, Wright and other officers shot Rodriguez while he was moving away from police and the crowd. He had *already* tossed the water bottle. There was no further shooting or contact to "disperse" him. Wright's intent, like the other officer who shot Rodriguez, was to punish and incapacitate, not disperse. |
| "It should now be undisputed that [Rodriguez] knowingly participated in a riot on May 30, 2020."[21] | Rodriguez tossing a water bottle does not constitute participation in a riot. The jury can see for themselves his actions and determine that he was not an "agitator", nor did he place officers or anyone else in any colorable danger. No admission can be cited by Wright because no admission to this inflammatory statement can be found in the record. Not only does Rodriguez deny this was a riot, but he avers that he presented no particularized danger to anyone warranting being shot by Wright and other officers. Again, When faced with footage of the Rodriguez shooting incident, Chief Robin Henderson conceded the protest at that time was not a "riot."[22] |

Further genuine issues of material fact will be addressed within the context of each legal argument below. As Defendant did for his expert Craig Miller, Rodriguez also here incorporates Plaintiff's expert Jeff Noble's report to assist the trier of fact.[23]

---

[19] Mot., ¶ 14.
[20] Mot., p. 9.
[21] Mot., ¶ 13.
[22] Def. Ex. 1, Henderson Depo. at 39:21-23 ("Q: Okay. When you look at this scene[], would you describe this scene at this time as a riot? A: No. Protest."); *see also* Mot. Exhibits 11, 12 and other video and photographic evidence in the record before the Court.
[23] Exhibit E (Noble report).

**Legal Standard**

A court should grant summary judgment only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Summary judgment is inappropriate where a material fact is "genuine" in that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Therefore, the Court must consider all the evidence in the record and make no determination as to the credibility of the evidence. *See id.* at 255. As this Court is aware, it views factual questions and inferences in a light most favorable to the nonmovant. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002).

Qualified immunity is an entitlement providing immunity from suit. *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). "To determine whether a government official is entitled to qualified immunity for an alleged constitutional violation, [courts] conduct [the] two-step analysis of *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)." *Lytle v. Bexar Cty.*, 560 F.3d 404, 409 (5th Cir. 2009) (internal citations omitted). First, the Court must "ask the threshold constitutional violation question of whether, taking the facts in the light most favorable to the plaintiff, the officer's alleged conduct violated a constitutional right." *Id.* at 409-10. If the officer violated a constitutional right, the Court must then "ask the 'qualified immunity question' of whether the right was clearly established at the time of the conduct." *Id.*

The existence of an issue of material fact is a question of law that the Court must decide and, in making that decision, it must "draw inferences most favorable to the party opposing the

motion, and take care that no party will be improperly deprived of a trial of disputed factual issues."

*John v. Louisiana*, 757 F.2d 698, 708, 712 (5th Cir. 1985).

## **ARGUMENT & AUTHORITIES**

### I.    **Constitutional Violation Question**

#### A.  **The excessive force claim arises from a seizure, thus implicating the Fourth Amendment and its objective reasonableness standard.**

Defendant Wright argues that the Fourth Amendment is not implicated here because Wright intended to "disperse violent rioters from within the protest crowds" and that, therefore, no seizure occurred."[24] Regardless of his subjective intent expressed after the fact, Wright's shooting Rodriguez immobilized him, taking him down to the ground. This was a seizure, and the excessive force claim is analyzed under the Fourth Amendment, not the Fourteenth Amendment.

"[W]here a plaintiff raises potential violations under the Fourth and Fourteenth Amendments, a Court should first consider whether the claim falls within the ambit of the Fourth Amendment—that is, whether it arises in the course of an arrest, investigatory stop, or other seizure of a free citizen. If so, the claim should be analyzed under Fourth Amendment jurisprudence." *Campbell v. City of Indianola*, 117 F.Supp.3d 854 (N.D. Miss. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). "If not, the claim should be analyzed as a due process violation under the Fourteenth Amendment." *Id.* (citing *Petta v. Rivera*, 143 F.3d 895, 911 n. 25).

"*All* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, ***or other 'seizure'*** of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness standard' rather than under a 'substantive

---

[24] Mot. at p. 9.

due process approach.'" *Graham*, 490 U.S. at 395 109 S.Ct. 1865 (emphasis added). Wright's motion attempts to edge Rodriguez's excessive force claim outside the Fourth Amendment because then it would leave the realm of the objective reasonableness of his actions, adding additional subjective factors such as "the motives of the state actor." *See Porro v. Barnes*, 624 F.3d 1322, 1325-26 (10ᵗʰ Cir. 2010). However, Wright's subjective intent cannot remove this excessive force claim from the applicable Fourth Amendment objective standard.

### B. Taken in the light most favorable to Rodriguez, Wright's shooting him constituted a seizure under the Fourth Amendment.

A person is seized by police, and thus entitled to challenge the police action under the Fourth Amendment, when the officer uses physical force to restrain or terminate movement through means intentionally applied. *Brendlin v. California*, 551 U.S. 249, 254 (2007). Here, Wright's shooting Rodriguez with the beanbag shotgun was a means intentionally applied, and it had the effect of seizing Rodriguez. His freedom of movement was certainly terminated or, at a minimum, restricted by being hit with the beanbag rounds.[25]

---

[25] Ex. B.



Other than purposely discharging his weapon, Wright's subjective intent has nothing to do with the analysis. In *Villanueva*, the Ninth Circuit answered the defendant officers' argument that because they fired at a truck but subjectively intended to hit the driver and not the passenger, the passenger was not seized as a matter of law by stating "[t]he Supreme Court has repeatedly rejected attempts to introduce this kind of subjectivity into Fourth Amendment analysis." *Villanueva v. California*, 986 F.3d 1158, 1165 (9th Cir. 2021). And so it has, and this Court should as well. Even if Wright's subjective intent was to "disperse"—a matter hotly contested by Plaintiff[26]—under *Brendlin*'s logic, it is irrelevant to whether a seizure occurred. What matters is that Wright's shooting Rodriguez was not an unintentional act or somehow a mistake on his part.

Any force used "leading up to and including an arrest" may be actionable under the Fourth

---

[26] *Infra.*, "Facts."

Amendment's prohibition against unreasonable seizures. *Porro*, 624 F.3d at 1325-26. A seizure occurs when an officer "by means of physical force or show of authority, has in some way restrained the liberty of [the] citizen." *United States v. Mask*, 330 F.3d 330, 336 (5th Cir. 2003) (quoting *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Graham*, the Supreme Court held that a seizure occurred when officers "cuffed [plaintiff's] hands tightly behind his back," carried him to the patrol car, drove him home and released him. *Graham*, 490 U.S. at 389. It was of no import that he was not arrested or prosecuted. The Supreme Court also held in *Brower* that a seizure occurred when police blocked the roadway with a tractor-trailer. *Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989); *see also Scott v. Harris*, 550 U.S. 372, 384 n. 10, 127 S.Ct. 1769 ("The only question in *Brower* was whether a police roadblock constituted a seizure under the Fourth Amendment.").

Here, any viewing of Rodriguez being shot shows that he is visibly immobilized, going down to the ground shortly after impact. He collapses to the ground, and requires help from a bystander to even stand.[27] "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt those facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 372; *see also Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) ("Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene.").

No warning to disperse or attempt to disperse the crowd is made at any point prior to or during Wright's shooting Rodriguez. The *Perkins* case cited by Wright is distinguishable because there the court found "no evidence from which a reasonable jury could conclude an objective intent

---

[27] Exhibit A, p. 8.

to restrain, rather than disperse Perkins." *Perkins v. City of Des Moines, Iowa*, 2024 WL 756283 (S.D. Iowa 2024). Perkins was instructed to "move along" and had been specifically instructed to leave the area. *Id*, at *9. No such "objective manifestation" of an intent to disperse is found here. Many of the cases cited by the district court in *Perkins* dealt with tear gas as well, not beanbag rounds fired *downward* at a protestor *against* the would-be "dispersal direction."

As the Seventh Circuit recognizes, "[b]ean-bag rounds are designed to stun and inflict blunt trauma, knocking a person down but not penetrating the skin or damaging internal organs more severely than a kick or punch would." *Bell v. Irwin*, 321 F.3d 637, 639 (7th Cir. 2003). Kicks and punches by officers with the intent of knocking a suspect down would obviously constitute a seizure. Simply because Wright chose to shoot Rodriguez to the same effect without putting his hands on him should not give him a "pass" under the law.

Another important fact in evidence of a seizure is the written APD policy. The Austin Police Department "Control Devices and Techniques" General Order 206 lists "Kinetic Energy Projectiles and their delivery systems" as "Approved **Control** Devices," states that they may be used "[w]hen a decision has been made to **control, restrain** or arrest a violent, threatening or escaping subject …."[28] Wright's contention that no seizure occurred because he did not intend to arrest Rodriguez fails in the face of his police department's description of the weapon's use. At any rate, even if the Court were to find that Wright used the shotgun in contravention of policy, his "intent to disperse" is squarely contested by plaintiffs. First of all, Rodriguez was already "dispersing" when he was shot, moving away from the police line.[29] Second, there is no statement or verbalization of this "intent" anywhere on Wright's body-worn camera footage (e.g. "I'm going to get him to disperse"). Wright does not continue to fire at Rodriguez when he is, in fact, unable

---

[28] Exhibit C, COA 0068 (Austin Police Department General Order 206).
[29] *See* Exhibit A, Maloney report, at p. 1, 6-8.

to disperse. Finally, the angle of shooting Rodriguez (from the overpass) could actually drive him *towards* police at the Main, not disperse him from it.

The Supreme Court held in *Brower* that "We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result." *Brower*, 489 U.S. at 599, 109 S.Ct. 1378. There is ample evidence that Wright's shooting Rodriguez constituted a seizure, and therefore Rodriguez's excessive force claim arises in the context of the Fourth Amendment and its reasonableness standard applies. *Graham*, 490 U.S. at 393-95, 109 S.Ct. 1865.

### C. Wright's unreasonable use of force violated Rodriguez's Fourth Amendment right against unreasonable seizure.

Rodriguez must establish that he "suffer[ed] an injury that result[ed] directly and only from a clearly excessive and objectively unreasonable use of force." *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020). Rodriguez indisputably suffered "at least some injury." *Jackson v. R.E. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). There is no argument made, nor could there be, that Rodriguez's injuries were not caused by the beanbag rounds.[30] "To determine whether a seizure was objectively reasonable, and thus whether an injury is cognizable, we ask 'whether the totality of circumstances justified [that] particular sort of [] seizure.'" *Flores,* 381 F.3d at 398 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).

"[T]he reasonableness of official use of force turns on a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 626 (5th Cir. 2006). "In assessing the government interest at stake, [courts] are guided by the '*Graham*

---

[30] *See*, *e.g.*, Exhibit A, Maloney expert report.

factors,' which 'include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [he] was actively resisting arrest or attempting to evade arrest by flight.'" *Deshotels v. Marshall*, 454 Fed.Appx. 262, 267 (5th Cir. 2011) (citing *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 487 (5th Cir. 2001)." "The standard is objective reasonableness under the totality of circumstances." *Byrd v. City of Bossier*, 23 F.Supp.3d 665, 670 (W.D. La. 2014) (citing *Graham*, 490 U.S. at 396, 109 S.Ct. 1865). While the *Graham* factors are illustrative of "the types of objective circumstances potentially relevant to a determination of excessive force," the Supreme Court does "not consider this list to be exclusive." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473, 192 L.Ed.2d 416 (2015).

Viewed in the light most favorable to Rodriguez, the nonmovant, the facts establish that: (1) Rodriguez was milling around the intersection for some time before he was shot, (2) there was no dispersal order given to Rodriguez or the crowd, (3) many other individuals who threw water bottles were not shot, (4) Rodriguez picked up a plastic water bottle from the ground and threw it aimlessly in the air, not intending to contact or harm police officers or anyone else,[31] (3) seconds *after* this Wright and another officer shot him, (4) he was not fleeing, (5) he was walking away from the police officer line in front of the Main, (6) the officers gave no warning before shooting him, and (7) the shots immobilized Rodriguez, wounding him in the ankle and torso.

### 1. Severity of Crime at Issue

Wright argues that Rodriguez "committed the serious crime of knowingly participating in a riot"—a Class B misdemeanor under Texas law.[32] He cites a case where a suspect threw a rock at an officer (*McVae*). He also argues that Rodriguez committed the "violent felony Assault of a

---

[31] This was his deposition testimony. *See* Def. Ex. 19, Rodriguez depo, at 9:23-25 ("I wasn't targeting police headquarters, just towards the sidewalk, not police."); 46:13 ("it was not my intention to target police.").
[32] Mot. at ¶ 36. *See* TEX. PENAL CODE Section 42.02.

Public Servant"—ostensibly qualifying Rodriguez's tossing a plastic water bottle as a "deadly weapon" under Texas Penal Code Section 22.02(a)(2). Even if the Court were to give credit to the argument that Rodriguez possessed some vicarious liability for other undisclosed, unnamed, undocumented, and unsubstantiated assaults occurring at the intersection of I-35 and 8th Street, which it should not, there is no direct evidence tying Rodriguez to any serious crime here.

Viewed in the light most favorable to Rodriguez, he did not knowingly join any riot (in fact, a riot did not even exist), and he assaulted no one by aimlessly tossing a water bottle in the air.

"When considering the severity of a crime under *Graham*, courts will normally consider the inherent violence of the offense." *Campbell*, 117 F.Supp. at 869 (citing *Schmidt v. Texas*, No. 08-cv-1696, 2009 WL 7808953, at *11 (S.D. Tex. 2009)("Plaintiff's crime, driving while intoxicated, was quite serious, but not inherently violent."); *see also Ray v. City of Colombus*, No. 1:09-cv-213, 2011 WL 3629225, at *3 (N.D. Miss. 2011)("Plaintiff's crime, trespassing, was not inherently violent."). Here, too, based on the video evidence, Rodriguez tossing a plastic water bottle that falls to the ground, is not inherently violent. Wright's attempts to lump Rodriguez in with other undisclosed assailants cannot bear the burden of proving that the material fact is undisputed—it is squarely disputed by the video evidence. Further, no officer, much less Officer Wright or his shooting companion, was hit with anything, much less the water bottle in question (which was not even directed at them). As in *Campbell*, "in the absence of such contact, the Court is skeptical how [Wright] could have formed a reasonable belief that an assault had occurred." *Id.* at 870. Viewed in the light most favorable to Rodriguez, this factor militates against qualified immunity.

## 2. Threat to Officers or Others

Wright next argues that the focus of this prong should be "whether the officer reasonably believed that the suspect posed a threat of serious harm to the officer or others."[33] As an initial matter, Rodriguez contests Wright's allegation of any reasonable belief of a threat here. Wright was positioned on the overpass, well outside the range of any "projectiles," much less Rodriguez's plastic water bottle. But even if his claimed belief was a threat to others, that, too is objectively unreasonable from simply viewing the videotaped evidence. There is no immediacy indicated at all. In fact, officers' body-worn cameras evidence their joking and calm demeanor on the overpass.[34]

But more importantly, the crux of the issue is whether the officer perceived the threat *at the moment of threat*, not afterward. It is undisputed that Wright and another officer shot Rodriguez *after* he tossed the water bottle. This is no immediate threat, much less a real one. The Fifth Circuit in *Harris* looked at the "moment of threat," not immediately *after*ward. No officer ever testified, nor can Wright point to any claim, that Rodriguez threw something else, or prepared to throw something else. "[A]n exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased." *Lytle*, 560 F.3d at 413 (5th Cir. 2009).

"A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury. There must be other significant circumstances that warrant the use of such force *at the time it was used*." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001) (citation omitted). In that Ninth Circuit case, the court recognized officers' need to make split-second judgments in tense situations, but, like here, acknowledged that the situation was "far from that of a lone police officer suddenly

---

[33] Mot., ¶ 37, quoting *Harris v. Serpas*, 745 F.3d 767, 773 (5th Cir. 2014).

[34] Def. Ex. 5, Wright Depo. at 81:13-16 ("I think we both got the dude in the red shirt . . . Yeah, it looked like it hurt pretty good." – possibly in reference to Modesto Rodriguez)

confronted by a dangerous armed felon threatening immediate violence." *Id.* at 1283. It held that "[a] thorough review of the record reveals that the facts are sufficiently unclear as to what [the officer] believed or feared—reasonable or not—that the determination must be made by a trier of fact, and not … by portraying the facts in the light most favorable to the moving party." *Id.* In other words, the Court here should not simply take the Defendant's argument as gospel when the Plaintiff's expert[35] and video evidence demonstrate serious issues with the credibility of those claims. Viewing the situation in the light most favorable to Rodriguez, Wright shot him while he was walking away from officers with no objects in his hand and no manifested action or intent to harm anyone.

### 3. Resisting Arrest

While contending that Wright shot Rodriguez to disperse him, Wright also conflictingly argues that Rodriguez was attempting to evade arrest by flight. No attempts were made to arrest anyone milling around the intersection—throwers or non-throwers[36]. In order to flee to evade arrest, Rodriguez would have to subjectively believe that he was going to be arrested. No evidence in the record supports that assumption.

Wright also creates a strawman argument—"Any argument that officers can only impact a rioter during his wind up but _**not**_ between throws defies practical reason …." There is *zero evidence* that Rodriguez was "in between throws." There is no evidence in the video footage that there was anything for him to pick up and throw. Officers shot him as he was walking in a non-threatening manner away from the police line. Wright's continued attempts to characterize Rodriguez as a violent "rioter" fail in light of the recorded footage. There is no objective indication that (1) Wright

---

[35] *See* Exhibit A (Maloney report), p. 6 ("Rodriguez did not pose a threat to these officers…"), p. 7 ("[Rodriguez] did not pose a threat to either the officers at Police Headquarters of the officers on the overpass."), p. 8 ("there was not threat present to the police officers or other protestors.").

[36] *See* Mot. at ¶11.

or any other officer intended to initiate an arrest, or (2) Rodriguez intended to flee to avoid any arrest. At the very bare minimum, serious factual discrepancies between the parties' positions makes summary judgment and qualified immunity inappropriate here.

### 4.  Scope of Intrusion and Balancing

The assessment of the gravity of the particular intrusion on Fourth Amendment interests is evaluated by the type and amount of force inflicted. "[T]he absence of physical injury is a factor that may signify that the force was not excessive, and it should be considered with the totality of circumstances." *Petta*, 143 F. 3d at 901. Likewise, where there *is* serious physical injury, that, too is considered in the evaluation. *See Montoya v. City of Flandreau*, 669 F.3d 867, 871 (8th Cir. 2012) ("The degree of injury suffered, to the extent it tends to show the amount and type of force used… is also relevant to our excessive force inquiry.").

Wright argues that "beanbag munitions are not lethal force."[37] However, deadly force is defined "as force carrying with it a substantial risk of causing death or serious bodily harm." *Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 (5th Cir. 1998). As the district court in *Smith v. City of El Paso* noted, "Bean bags can, however, cause serious injury or death if they strike a suspect's head." *Smith v. City of El Paso*, 2011 WL 13180179, at *7 (W.D. Texas 2011). In that case, the court found that the use of bean bag launchers did not constitute deadly force because the plaintiff was not hit in the head and refused any treatment for his abrasions. The blunt force trauma injuries suffered by Rodriguez here are far more serious[38] and there can be no doubt that officers risked serious bodily injury in the manner they shot him (from the overpass overhead downward

---

[37] Mot., p. 22.
[38] Ex. A, p. 3.

towards him). Also, many circuit courts have held that "bean bags can cause serious injury or death if they hit a relatively sensitive area of the body, such as the eyes, throat, temple or groin." *Glenn v. Wash. Cty.*, 673 F.3d 864, 871 (9th Cir. 2011). Further, as discussed in Plaintiff's Response to Defendant City of Austin's Motion for Summary Judgment (fully incorporated herein), a fact question exists whether Wright shot Rodriguez in a "red zone"—an area off limits with the bean bag gun unless the officer is justified in using deadly force. It is clear that the bean bag munitions and the manner Wright and other officers used them on May 30, 2020 carried with them a substantial risk of causing serious bodily harm and, in fact, did cause that harm in this case.

**D.  Even under a Fourteenth Amendment analysis, disputed issues of material fact exist on the claim insofar that summary judgment is inappropriate.**

Even if the Court were to determine as a matter of law that no seizure occurred, the Fourteenth Amendment analysis persists—"the right to be free of state-occasioned damage to a person's bodily integrity." *Tyson v. Sabine*, 42 F.4th 508, 517 (citation omitted). The record here, viewed in the light most favorable to Rodriguez, shows (1) an injury caused by Wright, (2) that Wright's actions were grossly disproportionate to the need for action under the circumstances, and (3) were inspired by malice rather than merely careless of unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience. *See Petta*, 143 F.3d at 902. The fact that Wright and his fellow officer shot Rodriguez after he tossed the water bottle, after any arguable threat to anyone's safety had passed, is fairly interpreted as "malice" here. There is no other explanation for it, given the timing. A reasonable jury could conclude from the evidence that Wright and his fellow officers shot Rodriguez with malice *for* throwing the water bottle—not to halt any immediate threat or protect the safety of anyone.

**E. Officer Wright violated the Constitution, both by his own actions and the aggregate actions of his and another officer's shooting Rodriguez.**

Wright argues in his motion that "[i]t is not clear whether Plaintiff has the evidence to prove whether one or both officers impacted [or] who impacted him where—or at all."[39] This is a gross mischaracterization of the record and evidence. As opposed to the *Epps* case cited by Wright,[40] Rodriguez does not "narrow the list of suspects to deputies," but identifies Wright by video footage, as well as his deposition testimony, as a shooter. Further, in *Epps* the district court outlined a burden-shifting approach that "requires that a plaintiff prove that a group of defendants caused a constitutional violation and then shifts the burden to each individual defendant to prove that they did not individually participate in the deprivation." *Epps*, at *3. The district court acknowledged that "Courts in this district have indicated support for this burden-shifting approach in certain situations." *Id.* However, the district court did not apply it because the plaintiff in that case did not "plausibly narrow[] down the list of possible shooters to the two defendant officers." *Id.* The same cannot be said here, where, viewing the evidence in his favor, Rodriguez, through expert testimony and objective video footage, can isolate Officer Wright as a shooter.

Officer Wright admitted in his deposition to firing his shotgun at the relevant interval of the video showing Rodriguez being hit.[41] While it is correct that Wright could not independently recollect the details, he testified in his deposition that his practice was to shoot if he saw someone throw something, which corroborates his shooting Rodriguez.[42] A reasonable jury could conclude from viewing the body camera footage and the aerial video footage that Officer Wright shot

---

[39] Mot. at ¶ 32.
[40] Mot. at ¶ 32- *Epps v. Cnty. Of Denver*, No. 1:20-cv-01878-RBJ, 2022 WL 523431, at *3 (D. Colo. 2022).
[41] *See* Def. Ex. 5, Wright Depo, at 57:13-58:7.
[42] *Id*, at 59:8-18.

Rodriguez individually. Finally, Plaintiff's expert Michael Maloney, who analyzed the evidence in this case, identifies Wright as shooting Rodriguez in his report.[43]

It is true that Officer Wright testified in his deposition that he believes his individual use of force was not excessive. However, he also admitted that "[t]he culmination of everything could be conceived as excessive, however, there's no way for us to know that the other force was being used at the time" when discussing the import of multiple officers targeting and shooting the same protestor.[44] But a reasonable jury could disagree with this assessment and hold the individual officers responsible because they knew there were other officers shooting into the crowd (Wright admits this when discussing their awareness of "field[s] of fire" "so that we didn't have multiple people impacting the same person."[45] This places individual accountability on Wright for his personal choice to shoot Rodriguez without making any attempt to confirm if another officer intended to shoot him, or in fact if any other officer did shoot him. In other words, Wright's own testimony evidences an individual responsibility to communicate with other officers to ensure that "we didn't have multiple people impacting the same person," which obviously happened here.

### 1. Bystander Liability

The Fifth Circuit has held that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Even if there was some colorable argument that Wright did *not* shoot Rodriguez, when viewing the allegations and summary judgment evidence most favorable to plaintiff, there is "a fact issue as to whether [Wright] had a reasonable opportunity to realize the excessive nature of the force and to intervene

---

[43] Ex. A at p. 6.
[44] *Id.* at 97:23-25.
[45] *Id.* at 78:12-79:4.

to stop it." *Id.* A reading of the record and review of the video footage raises a genuine issue of material fact as to Wright's "acquiescence in the alleged use of excessive force." *Id.*

In sum, Rodriguez's position is that Wright did, in fact, individually shoot him and used excessive force. The fact that another officer also shot him can be taken in the same context, and liability should attach to Wright for his failure to make sure that "we didn't have multiple people impacting the same person"—establishing a bystander liability theory reasonably taken from the evidence viewed in light most favorable to plaintiff. *Cf. Randall v. Prince George's County, Md.*, 302 F.3d 188, 204 n. 24 (4th Cir. 2002) ("The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer.").

### 2. Burden-Shifting to Officer Wright to prove he was not a shooter and/or identify who he claims was the shooter if it was not him.

Even assuming that there is an argument to be made about *whether* Officer Wright shot Rodriguez, the Court should apply the burden-shifting approach acknowledged in *Epps* and applied in *Dubner v. City and County of San Francisco*, 266 F.3d 959 (9th Cir. 2001), which was cited by the *Epps* court. *See Epps*, at *3-4. If Officer Wright believes that he can show either that he did not shoot Rodriguez or, in the alternative, that it was another officer who shot him, then Wright should present that information, rather than aver uncertainty where the record is clearly sufficient to show a genuine issue as to material fact. Unlike the plaintiff in *Epps*, Rodriguez can show through expert testimony and objective evidence that Wright shot him. Therefore, should Wright contest his individual liability, he should proffer some alternate explanation of the facts in the record to entitle himself to qualified immunity.

### 3. Integral Participation

Finally, if the Court decides that Officer Wright was not a bystander, he was at least an integral participant in the shooting. In *Melear v. Spears*, the Fifth Circuit established the concept of "integral participation" in the context of a Fourth Amendment claim. *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989). In that case the defendant officer argued that he was a "back-up participant" to an unconstitutional search because he "never kicked down the door, entered the apartment [or] searched the room." *Id.* at 1186. The Fifth Circuit rejected his attempt to evade liability, holding that he was a "full, active participant in the search, not a mere bystander" and that the jury was "justified in finding both officers liable for their integral participation in the violation." *Id.*

The Ninth Circuit adopted the "integral participant analysis" in *Boyd v. Benton County* in 2004: "Following the Fifth Circuit's analysis in *Melear v. Spears*, 862 F.2d 1177 (5th Cir.1989), we require[] 'integral participation' by each officer as a predicate to liability. *See Chuman,* 76 F.3d at 294. *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004). The defendant officers there argued that even if a Fourth Amendment violation occurred, only the individual officer that deployed the flash-bang device could be held liable for that violation. The Ninth Circuit roundly rejected this argument:

> [U]se of the flash-bang was part of the search operation in which every officer participated in some meaningful way. Third, every officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed. Therefore, under the integral participation analysis adopted in *Chuman,* each defendant may be held liable for the Fourth Amendment violation outlined above.

*Id.* at 780 (citation omitted). The Ninth Circuit squarely held that "'integral participation' ***does not require that each officer's actions themselves rise to the level of a constitutional violation***[,]" citing another Fifth Circuit case—*Jam ex rel. James v.* Sadler, 909 F.2d 834 (5th Cir. 1990). *Id.* (emphasis added).

In a set of facts very similar to this case, a district court found each officer present in a "skirmish line" liable for their use of force against the protestor plaintiff under an integral participant analysis. *James v. City of Los Angeles*, No. 221CV04525CBMASX, 2023 WL 9234935, at *6 (C.D. Cal. Dec. 5, 2023). Here, too, Officer Wright and the other officers were all part of a similar "skirmish line" and participated in shooting protestors with beanbag rounds. At some points the officers in the line even passed around the shotguns amongst themselves.[46] Wright should not be allowed to escape responsibility because he makes an unsubstantiated claim that he did not shoot Rodriguez, or tries to insert unjustified confusion (negated by the evidence) as to whether or not he did.

To be clear, Rodriguez asserts that Wright's actions individually constituted a constitutional violation of his Fourth Amendment right to be free from excessive force. However, Wright is also liable under either a bystander theory or under an "integral participation" analysis.

## II.     The Qualified Immunity Question

Rodriguez has argued, and continues to argue here, that qualified immunity as a rule should be overruled and this Court should decline to follow it.[47] However, to the extent the Court is compelled to apply it, application of the second *Saucier* prong weighs in favor of denying Defendant's motion. A constitutional right is clearly established if, in light of pre-existing law, the

---

[46] *E.g.,* Def. Ex. 8, Cherne Depo. at 78:14-23.

[47] *See* Dkt. No. 42, pp. 21-22 ("Justice Willett recently explained in his concurrence in *Rogers v. Jarrett*, No. 21-20200 (5th Cir. Mar. 30, 2023), that qualified immunity is flawed because it rests on a mistake. *Id.* (citing Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 CAL. L. REV. 201 (2023)). Qualified immunity has always been without basis based on the plain text of Section 1983 as passed.
    …
    While recognizing that qualified immunity is widely accepted without inspection or question, Plaintiff nonetheless asks the Court to hold that qualified immunity defenses are barred by the plain language of the Notwithstanding Clause of the 1871 Civil Rights Act, which has never been repealed or amended. Alternatively, if the Court finds itself bound by precedent to reject this analysis, Plaintiff preserves for appeal the issue that the cases applying qualified immunity defenses to Section 1983 actions were wrongly decided and must be overruled.")

violation of that right is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "For a right to be clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Deshotels*, 454 Fed.Appx. at 268. Although the Supreme Court's "case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5, 142 S. Ct. 4, 7–8, 211 L. Ed. 2d 164 (2021) (citing *White*, 580 U. S., at ——, 137 S.Ct., at 551).

"In the Fifth Circuit, '[i]t is beyond dispute that [a person's] right to be free from excessive force during an investigatory stop or arrest was clearly established in August 2007." *Campbell*, 117 F.Supp. at 873. In 2006, *Ciminillo v. Streicher* reversed a grant of summary judgment in favor of qualified immunity for the officer. 434 F.3d 461, 461 (6th Cir. 2006). The court held that "it was clearly established law in [the Sixth] Circuit at the time of the underlying events that individuals have a right not to be shot unless they are perceived as posing a threat to officers or others." *Id.* The court referenced another case, *Adams v. Metiva,* where it held that summary judgment was inappropriate for an excessive-force claim against police for using pepper spray when it remained disputed whether the plaintiff had committed a crime, whether he posed a threat, and whether he was resisting arrest. *Id.* (citing *Adams v. Metiva*, 31 F.3d 375, 385 (6th Cir. 1994)).

While Wright cites the *Morrow* case in his motion, there is Supreme Court precedent for the law that "[w]here [a] suspect poses no *immediate threat* to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Garner*, 471 U.S. at 2, 105 S.Ct. 1694. As to Wright's arguments that the beanbag rounds do not constitute deadly force and his contention that there was an immediate threat—both are squarely disputed by Rodriguez, *supra*, and that dispute should defeat his motion. Moreover, Officer Wright

and his fellow officers were almost certainly on notice of the clearly established right enumerated in *Deorle v. Rutherford*—that "less than deadly force that may lead to serious injury may be used only when a strong governmental interest warrants its use" and "when it is used, it should be preceded by a ***warning***."[48] This very language comes from a training slide used by the Austin Police Department.[49] A reasonable jury could find, as this Court should find from the evidence that Officer Wright and his fellow officers were on notice that shooting Rodriguez with beanbag rounds necessitated a strong governmental interest. If Defendant claims the term "strong governmental interest" was insufficiently detailed, he cannot avoid the clarity of clearly established law regarding the warning requirement.

The Supreme Court also rejected the notion that officer liability cannot exist "unless the very action in question has previously been held unlawful" in *Anderson v. Creighton*. 483 U.S. at 640, 107 S.Ct. 3034. And rightfully so—"[o]therwise, officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct." *Deorle*, 272 F.2d at 1286. This is precisely the result Wright requests of this Court when he demands entitlement "to the breathing room and forgiveness of qualified immunity."[50] What he is really asking for is the Court to give him a pass simply because a case involving the unwarranted and unconstitutional shooting of a non-violent unarmed protestor with beanbag rounds in Austin, Texas at the intersection of I-35 and 8th Street on May 30, 2020 has not made its way to the Fifth Circuit. The Court should not abdicate its responsibility to "take care that no party will be improperly deprived of a trial of disputed factual issues." *John v. Louisiana*, 757 F.2d at 708 (5th Cir. 1985).

---

[48] *See* Exhibit D, COA 4043 (APD Training slide).
[49] *Id.*
[50] Mot., ¶ 53.

While no identical case exists specifically matching all the facts here, courts confronted with similar facts have denied summary judgment. In *Ciminillo,* the Sixth Circuit reversed a grant of summary judgment in favor of the officer who shot the plaintiff with a bean bag propellant during what both parties agreed was a riot. 434 F.3d at 463. What the plaintiff was doing when he was shot and what the officers did afterward were disputed facts, which the court viewed in the light most favorable to the plaintiff. *Id.* at 463-64.

In reviewing the first *Graham* factor, the court assumed based on the plaintiff's version of the facts that he was not engaged in a crime when he was shot. *Id.* at 467. The court recognized that a plaintiff having committed no crime clearly weighs against a finding of reasonableness. *Id.* The court again assumed the plaintiff's version of events when it evaluated the second *Graham* factor. *Id.* Based on the plaintiff's claim that he was approaching the officer slowly with his hands up when the officer shot him, the court found the second factor weighed in the plaintiff's favor, despite the officer's claim that the plaintiff had thrown something. *Id.* The fact that the incident took place during a riot did not render the officer's conduct reasonable. *Id.*

In *Nelson v. City of Davis*, officers responded to a massive party at U.C. Davis comprising approximately 1,000 people. 685 F.3d 867, 872 (9th Cir. 2012). Partygoers were parking illegally, engaging in underage drinking, rocking a car, and breaking bottles. *Id.* at 873. They overwhelmed a police vehicle—some even threw bottles at it—and officers were forced to abandon it. *Id.* Several officers then assembled in riot gear, some of whom were armed with pepper ball guns. *Id.* Plaintiff was with a group of students attempting to follow orders to disperse when he was shot in the eye with a pepper ball. *Id.* at 874. The court found that both the risk of harm and the actual harm to the plaintiff were significant and required justification with "substantial government interests." *Id.* at 879.

In evaluating the first *Graham* factor, the court noted that at most, the plaintiff's conduct was a misdemeanor (trespassing), and considered it a minor infraction that would only justify minimal force, if any. *Id.* at 880. Recognizing that some partygoers were throwing bottles (presumably glass beer bottles) at officers, the court pointed out that, *even considering all the partygoers as a single entity,* the force used was not sufficiently justified. *Id.* at 883. Obviously, there are several factors here that make this case even easier to judge—namely that Plaintiff contests whether this was a "riot," and he did not throw a glass bottle, nor did he (or the crowd) overwhelm police.

The factual disputes in this case weigh against granting qualified immunity. Among other disputed genuine issues of material fact, there is disagreement about whether this incident was, or could be characterized as, a "riot." There is disagreement whether Officer Wright's contention of imminent harm to officers and others is credible or not. There may be disagreement whether or not Rodriguez was in any way warned or given an opportunity to comply with lawful orders, and how that did or did not factor into the reasonableness of Wright's actions. There is disagreement whether Wright had liability for knowing that other officers were shooting at Rodriguez. And there is disagreement whether shooting Rodriguez after he tossed a water bottle constitutes excessive force. The Court should rule, as the Fifth Circuit did in *Meadours v. Ermel*, that "[i]t is for a jury to decide the factual disputes, and at this stage we cannot say the officers are entitled to qualified immunity." *Meadours v. Ermel*, 483 F.3d 417, 424 (5th Cir. 2007) (citing *Kinney v.* Weaver, 367 F.3d, 337, 347 n. 8 (5th Cir. 2004)).

## Conclusion

The Court should deny the Defendant's Motion and allow a jury to decide the fact issues based on the evidence.

**Dated: August 26, 2024**

Respectfully submitted,

**HENDLER FLORES LAW, PLLC**

Scott M. Hendler – Texas Bar No. 9445500
shendler@hendlerlaw.com
Leigh A. Joseph – Texas Bar No. 24060051
ljoseph@hendlerlaw.com
Stephen D. Demik – Pro Hac Vice
sdemik@hendlerlaw.com
901 S. MoPac Expressway
Bldg. 1, Suite #300
Austin, Texas 78746
Telephone: (512) 439-3200
Facsimile: (512) 439-3201

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served to all counsel of record on August 26, 2024 via the Court's CM/ECF system.

Leigh A. Joseph