

MALONEYFORENSICS.NET

## FORENSIC SOLUTIONS



# Shooting Incident Reconstruction

Date of Report:  April 6, 2023

Analysis Completed By:  Michael S. Maloney, MFS

Subject Name:  Officers Harris, Wright and John Doe, Austin Police Department

Date of Incident: 05/30/2020

Location of Incident: Interstate 35 Overpass and 8th Street Intersection area near Police Plaza, Austin Texas

Jurisdiction of Incident: Travis County Texas
                    Austin Police Department

---

Victim: Modesto Rodriguez-Martinez

Years of Age: 26  (at date of incident)

Date of Injury: 05/30/2020

Cause of Injury:   Multiple wounds and injuries from High Energy Impact Munitions

Manner of Injury: **Aggravated Assault**

---

## Background

On the evening of May 30, 2020, Modesto Rodriguez was gathered with a group of protestors near the southeast corner of 8th Street and the I-35 frontage road, across the street from the Austin Police Department headquarters. Austin police officers were standing on the I35 bridge that carries interstate traffic above 8th Street and another line of officers was standing at the east end of the plaza in front of APD headquarters.

Modesto, who is deaf, would have been unable to hear any verbal commands, shots being fired or crowd verbal commotion. Modesto was dependent on correctly interpreting the visual cues of those around him to determine if a disbursement of the crowd was ordered or taking place.

At approx. 9:09pm, Modesto moves into the roadway, picks up a plastic water bottle and throws it towards the police line in front of the police headquarters building.  Modesto then turns and retreats from the roadway. Modesto is shot twice with impact munitions by Officer(s) of the Austin Police Department. Modesto collapses to the ground. Despite obvious debilitating injuries he is never approached by APD to render aid or affect an arrest.  He is assisted to an area of relative safety by bystanders. Austin PD had successfully and safely entered the crowd in front of Police Plaza just minutes earlier to remove and escort a car from the area.

## Qualifications of Reviewing Forensic Analyst

Michael S. Maloney has over thirty years experience in conducting forensic investigations and analysis for international, federal and state agencies. He has both developed and instructed training programs as well as being a recognized expert in: Crime Scene/Death Scene Reconstruction, Shooting Incident Reconstruction, Officer Involved Shooting Incidents, Blood Stain Pattern Analysis, Crime Scene Procedure and Methodology as well as Wound Dynamics and Mechanism of Injury Analysis. He holds a Master of Forensic Science degree from the George Washington University and has completed a Fellowship in Forensic Medicine.

## Materials Reviewed and Relied Upon

Scene LiDAR generated by Angelos Leiloglou

Police Body Worn Camera Footage:

    COA 4588 (Conf) Cherne BWC.mp4
    COA 4589 (Conf)  Kornbacher BWC.mp4
    COA 4592 (Conf)  LaBarbera BWC.mp4
    COA 4595 (Conf)  Attridge BWC.mp4
    COA 4596 (Conf)  Cunningham BWC.mp4
    COA 4597 (Conf)  Zelaya BWC.mp4
    COA 4598 (Conf)  Harris BWC.mp4
    COA 4599 (Conf)  Dranguet BWC.mp4
    COA 4603 (Conf) Yu BWC.mp4
    COA 4604 (Conf) Gordon BWC.mp4
    COA 5611 (Conf) Arnold BWC.mp4
    COA 4612 (Conf) An BWC.mp4
    COA 4614 (Conf) Luong BWC.mp4
    COA 4617 (Conf) Kreisner BWC.mp4
    COA 4622 (Conf) Bronson BWC.mp4
    COA 4591 (Conf)  clip Lynch BWC.mp4
    COA 4602 (conf)  clip (Cantu-Harkless BWC).mp4
    COA 4613 (Conf) clip (Alas BWC).mp4
    COA 4613 (Conf) Hethershaw BWC.mp4
    COA 4618 (Conf) clip (Cobaugh BWC).mp4
    COA 4621 (Conf) Wright BWC.mp4
    COA 4598 (Conf) clip (Harris BWC).mp4

Bystander Video:

    Rodriguez 000001 (bystander video).mp4
    Rodriguez 000002 (Injury video 1).mp4
    Rodriguez 000003 (Injury video 2).mp4
    Rodriguez 000004 (Injury video3.mp4
    Rodriguez 000176 (5-30-20 LULAC Livestream).mp4

Medical / Documentation of Injury:

    Rodriguez 000015 - 000021 (South Austin Medical Center MEDICAL).pdf
    Rodriguez 000005-000011  (Protest-Injury Photos).pdf

# Wound Dynamics

**MULTIPLE  GUNSHOT INJURIES (FROM IMPACT MUNITIONS FIRED FROM SHOTGUNS)**



The blunt force trauma injuries received are consistent with the impact weapons deployed by the Austin Police Department. Specifically with the kinetic "beanbag" style rounds.

## Mechanism of Injury

**KINETIC IMPACT MUNITIONS DEPLOYED BY AUSTIN PD AT POLICE PLAZA**

 

CTS 12 gauge Kinetic Round                    Def-Tech 12 gauge Kinetic Round

**KINETIC IMPACT DEFECT EVALUATION**

The contusion/abrasion injuries caused by the kinetic impact rounds are circular/elliptical in nature and consistent with injuries that would be received by the kinetic impact rounds (bean bag rounds) deployed by the Austin Police Department.

CTS 12 gauge
Kinetic Impact Round

Def-Tech 12 gauge Kinetic
Impact Round

 

1 inch                                                              1 1/2 inch

**MECHANISM OF IMPACTING PROJECTILE**

The projectile weighs 40 grams.  The manufacturers maximum velocity is listed at 270 f/sec and maximum effective range is listed as 75 feet.

## Establishing Shooter and Victim Location/Positions

**ESTABLISHING VICTIM AND SHOOTERS LOCATION / POSITION**

Multiple iterations of the body worn cameras of involved officers was used to determine when, where, and in what position Modesto Rodriguez received his injuries. Modesto Rodriguez picks a water bottle up from the ground and throws it .He is approximately 70 feet from the police line at the plaza in front of police headquarters at this time.  He then turns and moves approximately 40 feet and is 110 feet total from the police line at police headquarters when he is initially shot. At the time of the initial shot impact he is in the northbound lanes of the SI-35 Frontage Road as it intersects East 8th Street. Modesto Rodriguez drops to the road surface several steps later and collapses.

The locations of the Police Officers who shot Modesto Rodriguez was established through analysis of multiple iterations of the body worn camera footage from involved officers. The approximate distance from each established police firing locations to the location where Modesto Rodriguez is shot and falls to the ground is determined through scene LiDAR measurements and video analysis. As exact firing locations and the collapsed location of Modesto Rodriguez cannot be established measurements given are approximate.



## Event Analysis

**OFFICER(S) JOHN DOE (OFFICER(S) ON POLICE PLAZA)**

- Officers were deployed at the front of the Austin Police Headquarters at the Police Plaza. Officers were armed with a 12 gauge shotgun.

- At the time Modesto throws the water bottle and retreats, the squad of officers that commandeered the vehicle is in their line of fire.

- No shots are heard from the Police Headquarters at the time Modesto is shot.

**OFFICERS HARRIS, WRIGHT AND JOHN DOE(S) ON OVERPASS.**

- Two shots are fired at 02:09:05. These two shots came from separate shotguns as there is insufficient time between shots to chamber a fresh shot shell.

  - Officer Harris is viewed on body cam engaged in conversation targeting Modesto ("Red Shirt" and "Red Shirt Down") and discharging a round. He is also visible on Wrights body camera footage discharging the round.

  - Officer Wright is viewed aiming towards Modesto Rodriguez, engaged in conversation targeting Modesto ("Red Shirt" and "Red Shirt Down") and his right arm appears to be effected by recoil at the time the shots are fired at 02:09:05.

- These officers were deployed on the I35 overpass and armed with 12 gauge shotguns.

- These officers fired in the direction of Modesto Rodriguez with gunfire while he was moving from the roadway and moving away from the police line in front of Police Plaza.

- Modesto Rodriguez did not pose a threat to these officers as they were deployed on the overpass and its height is such to preclude effectively engaging them with thrown objects.

- These officers did not approach Modesto Rodriguez after he was shot to either effect an arrest or render aid.

## Decision to Shoot or not to Shoot

All Officers faced a two prong assessment when making the decision to fire.

1. Were they authorized to fire less lethal ammunition in the circumstance they found themselves in? The fact that other officers were firing does not give all officers blanket permission to fire at the protestor - police dynamic changes along the front where they interact.

    - Were they attempting to immediately stop (incapacitate) or deter someone from causing immediate threat to his life and safety or the life and safety of others?

    - Were they attempting to stop a suspect and effect an arrest after the suspect was engaged in an action for which this level of force is justified?

    - Had the situation elevated along Austin Police Department's use of force matrix to where less lethal ammunition is justified?

2. If Officers were situationally authorized to use less lethal force, were they able to deploy it without causing undue harm to Modesto Rodriguez or others in his vicinity?

    - Were they able to clearly distinguish a protester as that protester provided an immediate threat?

- Were they able to visually identify and target those body areas on the protester that are authorized for impacting?

- Was the targeted protester within the operational limitations of his weapon and munitions deployment criteria?

- Were they able to safely engage the protester without a risk of harm to others?

*Note: Being authorized to shoot and shooting are two different decisions. The first, being authorized to shoot, is conditional on being in a situation in which shooting is approved by the agency and law. The second, actually pulling the trigger, is at the discretion of the individual officer, not the agency.*

*The individual officer is responsible for the safe targeting and deployment of his weapon when he decides to pull the trigger. The officer is further responsible for ensuring medical aid is provided for any injured by his shooting. Additionally the officer is responsible for bringing the individual they shot into custody as the justification for them shooting is caused by felonious actions on the part of the individual they shot.*

**OFFICER(S) JOHN DOE (OFFICERS DEPLOYED ON POLICE PLAZA)**

Officer(s) were deployed as a part of protest suppression efforts by the Austin Police Department. The officer(s) were armed with their issue duty gear in addition to supplemental riot gear to include helmet, face shield, shotgun and kinetic impact (beanbag) rounds.

These officer(s) were not located or positioned in isolation but was rather a part of a police line that extended several officers deep and across the width of the entrance plaza to police headquarters. They were not in a location or position where they was at the end of the formation and in closer proximity to protesters. Protesters were gathered at the sidewalk and street outside of police headquarters main entrance. Officer(s) on the plaza in front of police headquarters are not observed shooting at the time Modesto Rodriguz was impacted.

**OFFICERS HARRIS, WRIGHT AND JOHN DOE(S) ON OVERPASS**

These officers were deployed with other officers tactically as a part of protest suppression efforts by the Austin Police Department. The officers were armed with their issue duty gear in addition to supplemental riot gear to include helmet, face shield, shotgun and kinetic impact (beanbag) rounds.

Officers were not located or positioned in isolation, but were rather a part of a police line that extended along the I35 overpass at East 8th Street. These officers were geographically separated from the protesters as they had secured the I35 from protesters. These officers fired in the direction of Modesto Rodriguez as he was moving away from the Plaza in front of Police Headquarters. Modesto did not pose a threat to either the officers at Police Headquarters Plaza or the officers on the overpass. Modesto was incapacitated by the initial shots as he can be seen falling to the ground. Modesto Rodriguez was impacted twice by police munitions.

## Conclusion

Officers fired kinetic impact munitions that impacted Modesto Rodriguez on his torso and ankle. At the time that officers targeted Modesto, positioned their weapons towards him, sighted in on him and pulled the trigger there was no threat present to police officers or other protesters. Officers on the Plaza in front of Police Headquarters had already engaged protesters and they were disbursing. After picking up and throwing a plastic water bottle towards the Plaza, Modesto was moving further away from Police Headquarters and away from its protective police line at the time he was shot. The Austin Police by deploying upon the overpass effectively set up an ambush with the protesters sandwiched between two opposing firing lines. When the officers on the overpass failed to exercise good judgement or control, they effectively sprung the ambush on Modesto by two shooters firing on him simultaneously as he tried to remove himself from the situation by walking away.

Officers clearly did not employ their weapons at Modesto in order to stop an illegal action as they never approach and take him into custody. Officers never render the required aid as he lies on the ground after being shot by two different officers. Rather, officers hold their positions in the police lines never signaling or requesting that they move forward to effect an arrest and provide aid. Just moments before this incident a small group of officers had left the Police Headquarters line and effectively move into the crowd of protesters to move a vehicle that had entered the same intersection where Modesto was shot. Clearly the police had the ability to render aid or effect an arrest after incapacitating Modesto Rodriguez with impact munitions but chose not to.

The deployment of less lethal munitions is guided by the Austin Police Department's internal guidelines. Officers violated these guidelines by using the rounds to disperse a crowd rather than to bring a suspect into custody, and by failing to render or request aid when Modesto was on the ground, unable to rise under his own power, and clearly injured.

**CAVEAT**

This report is based on the information, reports, photographs and data received to date. Additional information, if provided, may impact the finding and conclusions of this report.

*Michael S. Maloney*
Michael S. Maloney, MFS