APD General Orders Issued 4/21/2020



**GO 206**

Austin Police Department
General Orders



# Control Devices and Techniques

**206.1   PURPOSE AND SCOPE**
In an effort to reduce and minimize altercation related injuries to officers, the public and subjects, the Department authorizes the use of selected control devices. These control devices are approved in order to control violent or potentially violent subjects. It is anticipated that the use of these devices will generally result in fewer altercation related injuries to officers and subjects. The order below is for the use and maintenance of control devices.

206.1.1   PHILOSOPHY
The use of control devices upon a subject by an officer shall only occur when the officer, while in the performance of his lawful duties, reasonably believes it necessary to gain control of the subject.

The Department recognizes and respects the value of all human life and dignity without prejudice to anyone. It is also understood that vesting officers with the authority to use lawful and objectively reasonable force and protect the public welfare requires a careful balancing of all human interests.

**206.2   CONTROL DEVICES AND TECHNIQUES OVERVIEW**

206.2.1   WHEN DEVICES MAY BE USED
When a decision has been made to control, restrain or arrest a violent, threatening or escaping subject, an approved control device may only be used when its use appears objectively reasonable under the circumstances.

206.2.2   REPORTING USE OF CONTROL DEVICES AND TECHNIQUES
Any application of a control device and/or technique shall be documented as prescribed by General Order 211 (Response to Resistance Inquiry, Reporting and Review).

206.2.3   APPROVED CONTROL DEVICES
Only Department issued or approved control devices and munitions shall be carried. Only Department approved modifications may be made to any control device.

    (a)    The control devices approved by the Department are:

        1.    Baton and/or Impact Weapons (long, short, side-handle or expandable).

        2.    Chemical Agents (Oleoresin Capsicum (OC) spray).

        3.    Kinetic Energy Projectiles and their delivery systems.

        4.    TASER Device - See General Order 208 (TASER® Guidelines).

    (b)    Every control device shall be periodically inspected by the employee's supervisor or the designated instructor for a particular control device. All daily inspections, routine maintenance, charging and cleaning shall remain the responsibility of the employee assigned the device.

    (c)    All damaged, inoperative, or expended control devices shall be returned to the Property Control Office for disposal, repair and/or replacement.

Copyright Lexipol, LLC 2020/04/14, All Rights Reserved.
Published with permission by Austin Police Department

Control Devices and Techniques - 68

Rodriguez/Talley v COA et al    Rodriguez/Talley (Consolidated Cases)    COA 0068

**Austin Police Department**
General Orders

*Control Devices and Techniques*

206.2.4  TRAINING FOR CONTROL DEVICES

   (a)  Only employees trained and certified in the use of a specified control device are authorized to carry and/or use that device. Proficiency training must be monitored and documented by a certified device, weapons, or tactics instructor.

   (b)  Civilian employees may use issued chemical agents for self-defense only. Recertification for chemical agents issued to civilian employees shall occur annually.

   (c)  Officers shall re-certify annually for all control devices they have been previously approved to carry with the exception of the TASER®. Recertification for the TASER® shall follow the guidelines set forth in General Order 208 (TASER® Guidelines).

   (d)  All formal training and proficiency for control devices shall be documented in the employees' training file.

   (e)  Employees failing to demonstrate proficiency with a device shall be provided remedial training. Employees failing to pass remedial training shall not be permitted to carry the device and may be subject to other provisions prescribed by the Training Division.

**206.3  BATON AND IMPACT WEAPON GUIDELINES**

The baton and/or an impact weapon is authorized for use when, based upon the circumstances perceived by the officer, such force reasonably appears justified and necessary to result in the safe control of a subject.

The need to immediately incapacitate the subject must be weighed against the risk of causing serious injury. The head, neck, spine and groin should not be intentionally targeted except when the officer has an objectively reasonable belief the subject may cause serious bodily injury or death to the officer or others.

**206.4  CHEMICAL AGENT GUIDELINES**

Chemical agents are devices used to minimize the potential for injury to employees, offenders, or other subjects. They should be used only in situations where such force reasonably appears necessary.

   (a)  Authorized employees may use chemical agents when the application of the chemical agent is objectively reasonable to:

      1.  Subdue or control a violent or physically resisting subject.

      2.  Subdue or control a subject who by words or action has demonstrated an intention to be violent or to physically resist and who reasonably appears to present the potential to harm employees, himself, or others.

         (a)  Employees should give a verbal warning followed by a reasonable opportunity to voluntarily comply when practicable.

         (b)  Employees must be able to articulate their use of the chemical agent.

      3.  Apprehend a subject fleeing lawful arrest or detention.

      4.  Address situations where there is a reasonable expectation that it will be unsafe for employees to approach within contact range of the subject.

Copyright Lexipol, LLC 2020/04/14, All Rights Reserved.
Published with permission by Austin Police Department

    5.    Repel physical attacks from humans or animals.

    6.    Compel subjects to leave an enclosure.

    7.    Disperse violent crowds or riots.

### 206.4.1   PROHIBITED USES

The following are prohibited uses of chemical agents:

(a) To torture, psychologically torment, elicit statements or inflict undue pain on any individual.

(b) Horseplay or practical jokes.

(c) Demonstrations without the permission of a supervisor.

(d) When a subject exhibits **only** verbal and/or passive resistance to arrest or authority.

(e) When a subject is under physical restraint unless the subject is still aggressively resisting and lesser means of controlling the subject have failed.

### 206.4.2   CARRYING OF OLEORESIN CAPSICUM SPRAY

Uniformed employees carrying the OC spray shall carry the device in its holster on the equipment belt. Plainclothes and non-field employees may carry the OC spray as authorized, consistent with the needs of their assignment or at the direction of their supervisor.

### 206.4.3   TREATMENT FOR CHEMICAL AGENT EXPOSURE

Subjects who have been affected by the use of chemical agents should be afforded means of cleansing the affected areas as soon as practicable. Those subjects who complain of further severe effects shall be afforded a medical examination by competent medical personnel.

### 206.4.4   TRANSPORTING OF PRISONERS SUBJECTED TO CHEMICAL AGENT EXPOSURE

When transporting prisoners who have been subjected to chemical agents, officers shall ensure that the prisoner stays upright with a clear airway and is not placed in a prone position to avoid possible positional asphyxia. Officers must be especially careful when tightly restraining combative subjects following the use of chemical agents.

Before booking, officers shall advise jail personnel when a prisoner has been subjected to chemical agents.

### 206.5   KINETIC ENERGY PROJECTILES

This department is committed to reducing the potential for violent confrontations when such subjects are encountered. Kinetic energy projectiles are less likely to result in death or serious physical injury.

Kinetic energy projectiles are approved by the Department and are fired from 12 gauge shotguns that are clearly identified as less lethal shotguns. Certain munitions can be used in an attempt to

Copyright Lexipol, LLC 2020/04/14, All Rights Reserved.
Published with permission by Austin Police Department

Control Devices and Techniques - 70

Rodriguez/Talley v COA et al

Rodriguez/Talley
(Consolidated Cases)

COA 0070

## Austin Police Department
General Orders

*Control Devices and Techniques*

de-escalate a potentially deadly situation, with a reduced potential for death or serious physical injury.

### 206.5.1   DEPLOYMENT
Approved munitions are justified and may be used in an effort to compel individuals to cease their actions when such munitions present a reasonable option for resolving the situation at hand.

   (a)   Officers are not required or compelled to use approved munitions in lieu of other reasonable tactics if the involved officers determine that deployment of these munitions cannot be deployed safely.

   (b)   The safety of hostages, innocent subjects and officers takes priority over the safety of subjects engaged in perceived criminal or suicidal behavior.

### 206.5.2   VERBAL WARNINGS
A verbal announcement of the intended use of the kinetic energy projectile should precede its application unless it would otherwise endanger the safety of officers or when it is not practicable due to the circumstances.

   (a)   The purpose of the warning is for the following:

   1.   Provide the individual with a reasonable opportunity to voluntarily comply.

   2.   Provide other officers and individuals with warning that a kinetic energy weapon may be deployed.

   (b)   The fact that a verbal and/or other warning was given, or the reasons it was not given, shall be documented in any related reports, as well as any responses by the subject.

   (c)   When the less lethal kinetic energy projectile is deployed on scene, the officer carrying the weapon shall announce over the air as soon as practicable that the less lethal shotgun/40mm weapon was deployed and be acknowledged by the dispatcher.

   (d)   When given, the verbal warning should be "IMPACTING" to prevent any confusion as to which weapon system is being deployed.

### 206.5.3   EXAMPLES OF CIRCUMSTANCES APPROPRIATE FOR DEPLOYMENT
Examples include, but are not limited to, the following types of situations where the subject:

   (a)   Is armed with a weapon and the tactical circumstances allow for the safe application of approved munitions.

   (b)   Has made credible threats to harm himself or others.

   (c)   Is engaged in riotous behavior or is throwing rocks, bottles or other dangerous projectiles at people and/or officers, creating a risk for injury.

   (d)   There is reasonable suspicion to believe that the subject has already committed a crime of violence and is refusing to comply with lawful orders.

### 206.5.4   ADDITIONAL DEPLOYMENT CONSIDERATIONS

   (a)   Before discharging projectiles, the officer should consider the following factors:

Copyright Lexipol, LLC 2020/04/14, All Rights Reserved.
Published with permission by Austin Police Department

Rodriguez/Talley v COA et al    Rodriguez/Talley
(Consolidated Cases)    COA 0071

  1. The subject's capability to pose an imminent threat to the safety of officers or others.

  2. Whether the subject is actively resisting arrest or attempting to evade arrest by flight.

  3. The credibility of the subject's threat as evaluated by the officers present, and the subject's physical capacity/capability to carry out the threat.

  4. The availability of other force options and their possible effectiveness.

  5. Distance and angle to target.

  6. Type of munitions employed.

  7. Type and thickness of subject's clothing.

  8. The subject's actions dictate the need for an immediate response and the use of control devices appears appropriate.

(b) The use of Kinetic Energy Projectiles should generally be avoided in the following situations unless the totality of the circumstances indicate that other available options reasonably appear ineffective, impractical, and the officer reasonably believes that the need to control the individual outweighs the risk of using the Kinetic Energy Projectile.

  1. As a breaching tool for windows in vehicles, especially when the vehicle is occupied.

  2. As a breaching tool for windows of a structure, especially if it places occupants at risk of injury.

(c) An officer who is currently assigned to Special Operations Command and who has been trained in the use of Kinetic Energy Projectiles as a breaching tool may use that technique in a way that is consistent with their training.

### 206.5.5  SHOT PLACEMENT AND DEPLOYMENT DISTANCES

Officers should generally follow their training instructions regarding minimum deployment distances and target areas. The need to immediately incapacitate the subject must be weighed against the risk of causing serious injury or death.

The head and neck should not be intentionally targeted, however any target area or distance may be considered when it reasonably appears necessary to accomplish immediate incapacitation in order to prevent serious injury or death to officers or others.

### 206.5.6  REPORT OF USE

All kinetic energy projectile use shall be documented in the related incident report/supplements and notification made to a supervisor in compliance with General Order 211 (Response to Resistance Inquiry, Reporting and Review).

(a) Specific information on the use of a kinetic energy projectiles should include, but is not limited to, the following:

  1. Articulable reasons for the use of the kinetic energy projectile weapon.

Copyright Lexipol, LLC 2020/04/14, All Rights Reserved.
Published with permission by Austin Police Department

      2. Information on the type of individual who was subject to the kinetic energy projectile(s) (e.g., age, sex, health conditions).

      3. Any special circumstances surrounding the use of the kinetic energy projectile(s).

      4. Whether the kinetic energy projectile(s) application was successful.

      5. Where the projectile(s) impacted the subjects body.

      6. Number of kinetic energy projectiles deployed.

      7. Number of times subject was impacted by kinetic energy projectile(s).

      8. Approximate distance the kinetic energy projectile(s) was deployed from the subject.

   (b) Photographs of impact sites should be taken. Expended projectiles should be collected and the expended projectile(s) shall be submitted into evidence for future reference. The evidence packaging should be marked "Biohazard" if the projectile(s) penetrated the subject's skin.

### 206.6 PAIN COMPLIANCE TECHNIQUES

Pain compliance techniques may be effective in controlling a passive or actively resisting individual. Officers may only apply those pain compliance techniques for which the officer has an objectively reasonable belief that the use of such a technique appears necessary to further a legitimate law enforcement purpose.

   (a) Officers should consider the following when using pain compliance techniques:

      1. The potential for injury to the officers or others if the technique is not used.

      2. The potential for serious injury to the individual being controlled.

      3. Whether the pain compliance technique is effective in achieving an appropriate level of control.

      4. The nature of the offense involved.

      5. The level of resistance of the individual(s) involved.

      6. The need for prompt resolution of the situation.

      7. If time permits (e.g., passive demonstrators), other reasonable alternatives.

   (b) The application of any pain compliance technique shall be discontinued once the officer determines that compliance has been achieved or other more appropriate alternatives can reasonably be utilized.

### 206.6.1 USE OF FORCE TO SEIZE EVIDENCE

   (a) Pressure point techniques are the maximum amount of force authorized to seize evidence (e.g., narcotics) when there is probable cause to believe it is being held or hidden in the mouth of a subject.

Copyright Lexipol, LLC 2020/04/14, All Rights Reserved.
Published with permission by Austin Police Department

Control Devices and Techniques - 73

Rodriguez/Talley v COA et al

Rodriguez/Talley
(Consolidated Cases)

COA 0073

## Austin Police Department
General Orders

*Control Devices and Techniques*

(b) Soft/empty hand control is the maximum amount of force authorized to seize blood from a subject pursuant to a mandatory blood draw.

Copyright Lexipol, LLC 2020/04/14, All Rights Reserved.
Published with permission by Austin Police Department

Control Devices and Techniques - 74

Rodriguez/Talley v COA et al

Rodriguez/Talley
(Consolidated Cases)

COA 0074